1                     UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA

2                           (MIAMI)
                 CASE NO. 1:17-CR-20701-MGC-5

3

4   UNITED STATES OF AMERICA         Miami, Florida

5                             December 12, 2018
            vs.                   Wednesday

6

7   LEONARDO MIGUEL GARCIA MORALES

                             Scheduled for 9:00 a.m.

8                              Held 9:34 a.m. - 9:58 a.m.

9 _____

10                            **JURY TRIAL**
                             **DAY 7**

11                        **PAGES 1 - 23**

12          BEFORE THE HONORABLE DONALD L. GRAHAM
                UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15   FOR THE GOVERNMENT:       **IGNACIO JESUS VAZQUEZ, JR., AUSA**
                             **J. MACKENZIE DUANE, AUSA**

16                              United States Attorney's Office
                             Miami Special Prosecutions Section

17                              99 Northeast 4th Street
                             Room 806

18                              Miami, Florida   33132

19   FOR THE DEFENDANT:        **DERIC ZACCA, ESQ.**
                             Deric Zacca, P.A.

20                              110 Southeast 6th Street
                             110 Tower - Suite 1700

21                              Fort Lauderdale, Florida   33301

22

    STENOGRAPHICALLY

23   REPORTED BY:                   GLENDA M. POWERS, FPR, CRR, FPR
                             Official Federal Court Reporter

24                              United States District Court
                             400 North Miami Avenue

25                              Miami, Florida   33128

1                           I N D E X

2
                                                            PAGE
3

4   Guy Vargas Issue (Moot)                                  3

5
    Interstate Commerce Issue                                4
6

7   Cellular Telephone Records Issue                         7

8
    Scheduling Discussion                                   16
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Call to the order of the Court:)

 2              (Defendant Leonardo Garcia Morales aided by

 3    Court-Certified Spanish Interpreters.)

 4              COURTROOM DEPUTY:  United States District Court,

 5    Southern District of Florida; the Honorable Donald L. Graham

 6    presiding.

 7              THE COURT:  Good morning, and be seated, please.

 8              The parties previously involved in this cause are

 9    present this morning.

10              I received a communication from the Government that was

11    sent to my chambers indicating that the issue with the matter

12    that we were to litigate this morning, that is, the

13    introduction of the defendant's recorded statement by a private

14    investigator in the presence of Mr. Vargas -- the witness who

15    testified yesterday -- is now moot, and that the Government

16    will not be seeking the introduction of such testimony; is that

17    accurate?

18              MR. VAZQUEZ:  The Government is not seeking to

19    introduce the recorded statement.

20              THE COURT:  So are there any other matters related to

21    that issue, and that issue alone?

22              Defense?

23              MR. ZACCA:  No, Judge, I guess the matter is moot.

24              THE COURT:  Alright, very well.

25              The next issue that I want to address is the matter
```

1  raised by the Government, the interstate commerce issue.

2          And the Government presented us with a case

3  *United States versus Alexander*, 850 Fed 2d, 1500, a 1988

4  Eleventh Circuit case.  I have read the case, and it seems to

5  raise more issues than we have resolved.

6          So I'm not sure I'm following the Government's theory,

7  frankly, because you have clearly established that the goal of

8  travel in foreign or interstate commerce, that's one of the

9  elements of the crime, that's clear.

10          You introduced documents.

11          You introduced the testimony of Mr. Vargas.

12          So now, what is this other theory?  Why is it that

13  you've got to show some impact on assets, you know.

14          Your theory is that travel in interstate commerce was

15  interrupted in interstate commerce --

16          MR. VAZQUEZ:  Yes.

17          THE COURT:  -- so why the next step?

18          MR. VAZQUEZ:  Your Honor, we offered that, knowing

19  about this alternative disruption of assets theory,

20  understanding that when a company is -- a depletion of assets

21  theory, that when a company is, basically, destroyed by the

22  consequence of a robbery, that that -- under the precedent

23  we're aware of -- is an alternative means.

24          THE COURT:  But why would you -- given the evidence

25  that you have, why would you pursue an alternative theory when

1    you have an incontrovertible theory that you've already proved?

2         MR. VAZQUEZ:  Your Honor, just simply because we

3    understood that it existed in this case, that either one would

4    satisfy the statute.

5         THE COURT:  Well, I don't know that it does exist,

6    because here's the problem.  You've introduced some cases where

7    the theory -- the only theory in the case you submitted, in the

8    *Alexander* case, was the depletion of assets theory.

9         So when you read the cases carefully, and you read the

10   statute carefully, I think I would need more research, because

11   I'm not sure which entity would have to have its assets

12   depleted.

13        Does the U.S. law have authority over the assets of a

14   Bolivian country?  I could understand your theory if you were

15   trying to show that the Opa Locka entity had its assets

16   depleted, because the U.S. has jurisdiction over those

17   entities, but your cases are different than the facts here.

18        Here we extra territorial items coming in from Bolivia,

19   and you're saying depletion of assets.  Do I have jurisdiction

20   over the assets of the Bolivian company?

21        I don't know the answer, frankly.  I don't know.

22        But what I'm suggesting is that this case, I'm not

23   sure, resolves all of the issues.  We would have to do more

24   research into foreign entities and foreign commerce to see if

25   this really fits.

6

1              I don't think you want to pursue a theory that may not

2    be consistent with law.  And so, before you pursue this theory,

3    I think you better do some research so that you can be

4    absolutely positive that the entity and the enterprise that's

5    referred to in the statute includes the depletion of assets of

6    the foreign entity.  It's not quite clear.

7              MR. VAZQUEZ:  Yes, Your Honor.

8              We're going to pursue that, and we will provide any

9    additional cases to the Court.

10             THE COURT:  Yes, I think so.  I like to try cases one

11   time.

12             MR. VAZQUEZ:  Yes, sir.

13             THE COURT:  And we better be very positive on this

14   alternative theory.  I mean, frankly, I don't know why you have

15   an alternative theory.  If I've ever seen foreign commerce,

16   I've seen it in this case.

17             MR. VAZQUEZ:  Yes, Your Honor.

18             THE COURT:  So, I don't know if you want to waste your

19   time on it, or if you find it interesting.  Do a little more

20   research and let me know where you're coming from.

21             So just to read a paragraph from your case, under that

22   theory:  Commerce is affected when an enterprise, which either

23   is actively engaged in interstate commerce, or customarily

24   purchases items in interstate commerce, has its assets depleted

25   through extortion, thereby, curtailing the victim's potential

1      as a purchaser of goods.

2              The purchaser in this case is the Opa Locka entity.

3              So maybe you fashion an argument that shows that these

4      are parallel scenarios, but I'm not a hundred percent sure, and

5      I want you all to be a hundred percent sure, if that's the

6      theory you want to pursue.  Alright.

7              Is there anything else we can resolve this morning?

8              MR. VAZQUEZ:  Yes, Your Honor.

9              If you have the time, we have a bit of a professional

10     dispute on the summary report that in our presentation of our

11     cellular phone witness will address.

12             Previously, the Court ruled that there was not

13     sufficient notice regarding the GPS.

14             My understanding is that we could present a summary

15     witness to provide a summary of his review of the cell phone

16     records.  And so I have asked the representative -- the

17     witness -- to boil down solely to his analysis of cell phone

18     records.

19             THE COURT:  Now, this is an expert testifying about

20     cell phone records?

21             MR. VAZQUEZ:  We had previously attempted to notice him

22     as an expert.  The Court told us that you found that notice

23     insufficient.

24             THE COURT:  No proper notice; right?

25             MR. VAZQUEZ:  We discussed it.

1            I said, Your Honor, may that witness testify about, in

2   summary fashion, of the cellular phone records, simply --

3            THE COURT:  So, tell me what the testimony will be

4   about the cellular records.  So, first, you're going to have

5   records authenticated or some agreement as to authentication?

6            MR. VAZQUEZ:  Yes.

7            THE COURT:  So now there are records in evidence that

8   match particular phone numbers?

9            MR. VAZQUEZ:  Yes.

10           THE COURT:  And what will the records reveal, that

11   there was contact between different phone numbers?

12           MR. VAZQUEZ:  Yes.

13           THE COURT:  We're not talking about general physical

14   locations, and towers, and things like that, which I think

15   would require an expert.

16           MR. VAZQUEZ:  That's how Your Honor ruled, and we have

17   excised that.

18           THE COURT:  This number called this number?

19           MR. VAZQUEZ:  Correct.

20           THE COURT:  We don't know who answered it, but we know

21   it's registered to John Doe, and John Doe called Jack Smith?

22           MR. VAZQUEZ:  Yes, sir.

23           THE COURT:  And when we arrested John Doe, he had that

24   phone in his pocket?

25           MR. VAZQUEZ:  Yes, Your Honor.

1           And if I may explain a little bit.  I have a copy of

2    how it looks now, I think it can be streamlined further, I can

3    pass that up or use the Elmo.

4           If Your Honor would like to resolve them for us, I

5    trimmed it down a lot, I'm happy to continue to do that.

6           THE COURT:  Alright.  Now, is this the document you're

7    talking about introducing?

8           MR. VAZQUEZ:  Yes.

9           THE COURT:  Why are you introducing statements about

10   who said what?

11          MR. VAZQUEZ:  So, on the first page, I think there's

12   some basic questions, and I've agreed with Mr. Zacca to excise

13   these summaries --

14          THE COURT:  The purpose of the analysis.

15          MR. VAZQUEZ:  Yes.

16          THE COURT:  Unless the witness can talk about that.

17          MR. VAZQUEZ:  Yes, that will be removed.

18          THE COURT:  But this is not something you give to the

19   jury.

20          MR. VAZQUEZ:  Yes, this will be boiled down.  That's

21   one of the reasons why the Court --

22          THE COURT:  Okay.

23          MR. VAZQUEZ:  I think the gravamen of our dispute is

24   sort of -- starts on the first page, and the data.

25          So we understand that the cellular phone that was

1    recovered from Mr. Morales at the crime scene had contained a

2    telephone number at the top, so the witness --

3              THE COURT:  So how are you going to prove that?

4              So someone seized the phone at the scene?

5              MR. VAZQUEZ:  Yes.

6              THE COURT:  And what, you gave it to a technician or

7    something?

8              MR. VAZQUEZ:  The phone was -- has been --

9              THE COURT:  You saw a number on it?

10             MR. VAZQUEZ:  Yes.  The phone has been admitted into

11   evidence; which, also has been admitted into evidence, was a

12   binder which reflects the download of the phone.

13             And there's a report summary of what was in the phone

14   that was found on the person -- around the person of Leonardo

15   Morales.

16             THE COURT:  And is it in evidence now?

17             MR. VAZQUEZ:  Yes, sir.

18             THE COURT:  Alright.

19             MR. VAZQUEZ:  So we pulled the records that is

20   associated with the number that was found on that phone, and

21   so --

22             THE COURT:  You have that authenticated and the records

23   are in evidence?

24             MR. VAZQUEZ:  Yes.  And that will happen with the next

25   witness.  I believe that we have an agreement on those records.

```
 1          THE COURT:  Alright.

 2          MR. VAZQUEZ:  So then, if that comes to pass, the first

 3   record, a part of the report would read like this:

 4          Leonardo Morales, this is the telephone number

 5   associated with the phone.

 6          THE COURT:  So the witness would, he would testify to

 7   that?

 8          MR. VAZQUEZ:  Yes.

 9          THE COURT:  You're not talking about giving a narrative

10   to the jury?

11          MR. VAZQUEZ:  What I would like to do and what I want

12   to clear with you, Your Honor, if this presentation can be

13   offered under 1006 as a summary of his testimony, and then --

14          THE COURT:  But see, normally -- normally, with a

15   summary, you don't have a narrative.  You have numbers, you

16   have "2222" and it reached "4444."

17          MR. VAZQUEZ:  Right.

18          THE COURT:  And you have the arrow going -- because

19   your records are in evidence, and this is just a summary of

20   that.  It's not a summary of the testimony.  It's a summary of

21   the numbers, or the formulas, or something of that sort.

22          MR. VAZQUEZ:  So what I -- does the Court -- at least

23   for the first page -- object to the name "Leonardo Morales" --

24   does not approve of the name "Leonardo Morales" next to the

25   telephone number?
```

1          THE COURT:  No.  What I don't approve of is the

2     narrative.  Now, if you had a chart and it has "4444" and it

3     has "Leonardo Morales" underneath it --

4          MR. VAZQUEZ:  Yes.

5          THE COURT:  -- that would be fine.

6          MR. VAZQUEZ:  So, on this first page, there is no

7     narrative that I see, so -- on the first cover page.

8          THE COURT:  Well, first of all, this is not a lecture

9     on the Department of Justice or PAS (phonetic); okay?

10          So if you want it -- I mean, what's in evidence?  This

11     seal is not in evidence.

12          MR. VAZQUEZ:  Okay, take all of this off.

13          THE COURT:  You have numbers and names.

14          MR. VAZQUEZ:  Okay.

15          THE COURT:  So even if you want to have numbers -- so

16     you don't have to characterize it as the "historical cellular

17     analysis."  You can do that in your closing argument as a

18     demonstrative exhibit if you wanted to.

19          MR. VAZQUEZ:  Yes, yes.

20          THE COURT:  But if you had a name and a number and the

21     phone company, that will be fine.

22          MR. VAZQUEZ:  Okay.  I will strike all of that extra

23     material.

24          The next line of inquiry is the telephone number -- for

25     example, below "Leonardo Morales" on the cover page, we have

1   the records for that.

2           We also have admitted into evidence Mr. Morales' phone,

3   which has this telephone number associated with the name

4   "Alfre."

5           A witness has testified that "Alfre" -- Mr. Kindelan --

6   he uses the nickname "Alfre."

7           THE COURT:  See, that all comes in in closing argument.

8           MR. VAZQUEZ:  Okay.  So would it be acceptable for the

9   name "Kindelan" on this presentation, on these slides, to be

10  present, or should -- does the name "Kindelan" have to be

11  stricken?

12          THE COURT:  It seems to me that you're trying to give

13  your closing argument in the middle of your case.

14          What you want now are bare facts.  This number

15  connected with this number and this phone is registered to

16  John Smith.

17          And then during your closing argument, you say, And

18  ladies and gentlemen, you know who John Smith is --

19  "Kindelan" -- and that's the way that is presented.

20          MR. VAZQUEZ:  So we have one piece of evidence,

21  Your Honor, that the witness has looked at, which is the cell

22  phone report which has the nickname "Alfre" associated with the

23  telephone number.

24          THE COURT:  And why does it have the nickname?

25          Is the nickname on the account?

1        MR. VAZQUEZ:  The nickname is in the Morales -- it is

2  not in the account.  These accounts don't have the names, they

3  don't have subscriber information.

4        So Mr. Morales programmed his cell phone.

5        THE COURT:  Okay.  So he could say, I looked at the

6  cell phone and in the cell phone there was some numbers --

7        MR. VAZQUEZ:  Yes.

8        THE COURT:  -- and next to that number that I saw in

9  the cell phone was "Kindelan."

10       MR. VAZQUEZ:  Was the name "Alfre" -- or whatever it

11  says.

12       THE COURT:  I don't know, whatever it is, I mean, that

13  would be summarizing that which is in evidence.

14       MR. VAZQUEZ:  Yes, Your Honor.  Okay.  I think that --

15  so I will strike the name "Alfredo Kindelan," and it will just

16  read "Alfre," and then --

17       THE COURT:  What is --

18       MR. VAZQUEZ:  -- what's literally in evidence.

19       THE COURT:  -- literally, in evidence.

20       MR. VAZQUEZ:  Yes.

21       THE COURT:  Yes, sir?

22       MR. ZACCA:  Yes, Judge, there's one piece of the

23  analysis here that the Court should consider.

24       What appears on the phone that was recovered on the

25  scene, when you take out and extract the contacts, is the name

1    "Alfre" and that number.

2          There is no witness that's going to come in and say

3    that that name, "Alfre" in that phone is referring to Alfredo

4    Kindelan.

5          THE COURT:  I mean, I'm not sure what the problem is.

6    His witness can say there's a number and there's a name,

7    whatever that is.

8          Now, it seems to me, if the point is that it's a

9    particular person, you have to have some evidence of that.

10          He's saying you don't have evidence of that.

11          You're saying that you do?

12          MR. VAZQUEZ:  Yes, in the testimony of Alfredo

13    Kindelan, all of the nicknames that we found were identified

14    with coconspirators, so I can argue that to the --

15          THE COURT:  You're losing me.  So what is the evidence

16    of this name?  Who said something about this name?

17          MR. VAZQUEZ:  So Alfredo Kindelan said that he used the

18    nickname "Alfre" --

19          THE COURT:  Okay.

20          MR. VAZQUEZ:  And the nickname "Alfre" is in the

21    cellular phone, and there were contact --

22          THE COURT:  That would be his link, that would be his

23    argument.

24          MR. ZACCA:  May I suggest something for the Court's

25    consideration?  I could have 10 phone numbers on my phone with

 1   the name "Alfre" on it.  How is the Government going to link

 2   that this particular number is --

 3            THE COURT:  He's not.

 4            MR. ZACCA:  -- to that particular "Alfre"?

 5            THE COURT:  There's the inference.

 6            The witness said, "I'm Alfre," and he's going to say --

 7   the expert is not going to say "Alfre" is this person.

 8            He has to use the testimony in his closing argument to

 9   say it's "Alfre".  That's a conclusion.  That's an argument.

10            It might be someone else.

11            MR. VAZQUEZ:  And but the expert can address:

12            There was a cell phone that I reviewed, it had the

13   nickname "Alfre" --

14            THE COURT:  It has the nickname "Alfre."

15            MR. VAZQUEZ:  -- had this telephone number, this is the

16   cell phone records of that telephone number?

17            THE COURT:  Yes, that's just the bare facts.  Now, in

18   closing, he's going to say, so -- and that's the "Alfre."

19            He may say -- I'm not sure what you're going to say --

20   but "Alfre" is a Dionne Warwick song and that could mean

21   anything; okay?

22            MR. ZACCA:  Understood, Judge.

23            THE COURT:  Alright.  Anything else?

24            MR. VAZQUEZ:  Not at this time, Your Honor.

25            THE COURT:  How do you think we're doing with our

1    schedule?  I'm just wondering if we might finish before

2    Christmas, or likely not?

3           And I'm not rushing you, it makes no difference to me.

4           MR. VAZQUEZ:  I think that we may get to rest on

5    Wednesday.

6           THE COURT:  Okay.  How much time are you all asking for

7    closing arguments?

8           MR. VAZQUEZ:  Your Honor, I just -- if we had an

9    hour-and-a-half to divide for the Government.

10          THE COURT:  Defense?

11          MR. ZACCA:  I'll ask for whatever the Government asks

12   for.  But I can tell you, Your Honor, I won't take the full

13   hour-and-a-half, I don't need that much time.

14          But I will take what the Government gets.

15          THE COURT:  Alright.  Well, I'll give you equal time.

16   The question is 90 minutes, is that -- why do you think you

17   need 90 minutes?  I'm just -- you had a lot of records to tie

18   up, et cetera, is that where it's going?

19          MR. VAZQUEZ:  Yes, there's audio recordings that we may

20   need to address, we have cellular phone records that we may

21   need to address, video recordings.

22          I just want to make sure that --

23          THE COURT:  Alright.  You both have a maximum of 90

24   minutes.  I think it will probably take about 20 minutes for

25   the instructions.

18

1        So we're going to need a session for closings and

2 instructions. How long do you think your case will take?

3        MR. ZACCA: If we present a case, Judge, in light of

4 today's developments, it would be a day, a four-hour session.

5        THE COURT: Well, we discussed the issue yesterday of

6 what should we do if we are very close to Friday, and we'll

7 just have to wait and see where we are and we can decide at

8 that time if we are going to have closings before or closings

9 after the holiday.

10        As I expressed yesterday, I'm a little reluctant to

11 have closings and instructions and then have a week break and

12 have them come in and deliberate.

13        I would prefer having the closings and instructions and

14 immediately begin the deliberations.

15        So we'll see where we are and handle it accordingly.

16        Alright, if there's nothing further, thank you all very

17 much. Have a good day, and we will resume on Monday morning at

18 9:00 a.m. Thank you.

19        MR. VAZQUEZ: Thank you, Your Honor.

20        MR. ZACCA: Thank you, Judge. Have a good morning.

21        COURT SECURITY OFFICER: All rise.

22        (Proceedings adjourned at 9:58 a.m.)

23

24

25

```
1
2                    C E R T I F I C A T E
3
        I hereby certify that the foregoing is an
4
    accurate transcription of the proceedings in the
5
    above-entitled matter.
6
7
    January 18th, 2020   /s/Glenda M. Powers
8                        GLENDA M. POWERS, RPR, CRR, FPR
                         United States District Court
9                        400 North Miami Avenue, 08S33
                         Miami, Florida 33128
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## /

**/s/Glenda** [1] - 19:7

## 0

**08S33** [1] - 19:9

## 1

**1** [1] - 1:11
**10** [1] - 15:25
**1006** [1] - 11:13
**110** [2] - 1:20, 1:20
**12** [1] - 1:5
**1500** [1] - 4:3
**16** [1] - 2:8
**1700** [1] - 1:20
**18th** [1] - 19:7
**1988** [1] - 4:3
**1:17-CR-20701-MGC-5** [1] - 1:2

## 2

**20** [1] - 17:24
**2018** [1] - 1:5
**2020** [1] - 19:7
**2222** [1] - 11:16
**23** [1] - 1:11
**2d** [1] - 4:3

## 3

**3** [1] - 2:4
**33128** [2] - 1:25, 19:9
**33132** [1] - 1:18
**33301** [1] - 1:21

## 4

**4** [1] - 2:5
**400** [2] - 1:24, 19:9
**4444** [2] - 11:16, 12:2
**4th** [1] - 1:17

## 6

**6th** [1] - 1:20

## 7

**7** [2] - 1:10, 2:7

## 8

**806** [1] - 1:17
**850** [1] - 4:3

## 9

**90** [3] - 17:16, 17:17, 17:23
**99** [1] - 1:17
**9:00** [2] - 1:7, 18:18
**9:34** [1] - 1:8
**9:58** [2] - 1:8, 18:22

## A

**a.m** [5] - 1:7, 1:8, 18:18, 18:22
**above-entitled** [1] - 19:5
**absolutely** [1] - 6:4
**acceptable** [1] - 13:8
**accordingly** [1] - 18:15
**account** [2] - 13:25, 14:2
**accounts** [1] - 14:2
**accurate** [2] - 3:17, 19:4
**actively** [1] - 6:23
**additional** [1] - 6:9
**address** [5] - 3:25, 7:11, 16:11, 17:20, 17:21
**adjourned** [1] - 18:22
**admitted** [3] - 10:10, 10:11, 13:2
**affected** [1] - 6:22
**agreed** [1] - 9:12
**agreement** [2] - 8:5, 10:25
**aided** [1] - 3:2
**Alexander** [2] - 4:3, 5:8
**Alfre** [18] - 13:4, 13:5, 13:6, 13:22, 14:10, 14:16, 15:1, 15:3, 15:18, 15:20, 16:1, 16:4, 16:6, 16:7, 16:13, 16:14, 16:18, 16:20
**Alfre"** [1] - 16:9
**Alfredo** [4] - 14:15, 15:3, 15:12, 15:17
**alone** [1] - 3:21
**alright** [9] - 3:24, 7:6, 9:6, 10:18, 11:1, 16:23, 17:15, 17:23, 18:16
**alternative** [5] - 4:19, 4:23, 4:25, 6:14, 6:15
**AMERICA** [1] - 1:4
**analysis** [4] - 7:17, 9:14, 12:17, 14:23

## A (continued)

**answer** [1] - 5:21
**answered** [1] - 8:20
**APPEARANCES** [1] - 1:14
**approve** [2] - 11:24, 12:1
**argue** [1] - 15:14
**argument** [8] - 7:3, 12:17, 13:7, 13:13, 13:17, 15:23, 16:8, 16:9
**arguments** [1] - 17:7
**arrested** [1] - 8:23
**arrow** [1] - 11:18
**assets** [11] - 4:13, 4:19, 4:20, 5:8, 5:11, 5:13, 5:15, 5:19, 5:20, 6:5, 6:24
**associated** [4] - 10:20, 11:5, 13:3, 13:22
**attempted** [1] - 7:21
**Attorney's** [1] - 1:16
**audio** [1] - 17:19
**AUSA** [2] - 1:15, 1:15
**authenticated** [2] - 8:5, 10:22
**authentication** [1] - 8:5
**authority** [1] - 5:13
**Avenue** [1] - 1:24, 19:9
**aware** [1] - 4:23

## B

**bare** [2] - 13:14, 16:17
**basic** [1] - 9:12
**BEFORE** [1] - 1:12
**begin** [1] - 18:14
**below** [1] - 12:25
**better** [2] - 6:3, 6:13
**between** [1] - 8:11
**binder** [1] - 10:12
**bit** [2] - 7:9, 9:1
**boil** [1] - 7:17
**boiled** [1] - 9:20
**Bolivia** [1] - 5:18
**Bolivian** [2] - 5:14, 5:20
**break** [1] - 18:11
**BY** [1] - 1:23

## C

**carefully** [2] - 5:9, 5:10
**CASE** [1] - 1:2
**case** [13] - 4:2, 4:4, 5:3, 5:7, 5:8, 5:22,
6:16, 6:21, 7:2, 13:13, 18:2, 18:3
**cases** [5] - 5:6, 5:9, 5:17, 6:9, 6:10
**cell** [10] - 7:15, 7:17, 7:20, 13:21, 14:4, 14:6, 14:9, 16:12, 16:16
**Cellular** [1] - 2:7
**cellular** [7] - 7:11, 8:2, 8:4, 9:25, 12:16, 15:21, 17:20
**Certified** [1] - 3:3
**certify** [1] - 19:3
**cetera** [1] - 17:18
**chambers** [1] - 3:11
**characterize** [1] - 12:16
**chart** [1] - 12:2
**Christmas** [1] - 17:2
**Circuit** [1] - 4:4
**clear** [3] - 4:9, 6:6, 11:12
**clearly** [1] - 4:7
**close** [1] - 18:6
**closing** [7] - 12:17, 13:7, 13:13, 13:17, 16:8, 16:18, 17:7
**closings** [5] - 18:1, 18:8, 18:11, 18:13
**coconspirators** [1] - 15:14
**coming** [2] - 5:18, 6:20
**Commerce** [1] - 2:5
**commerce** [9] - 4:1, 4:8, 4:14, 4:15, 5:24, 6:15, 6:22, 6:23, 6:24
**communication** [1] - 3:10
**company** [4] - 4:20, 4:21, 5:20, 12:21
**conclusion** [1] - 16:9
**connected** [1] - 13:15
**consequence** [1] - 4:22
**consider** [1] - 14:23
**consideration** [1] - 15:25
**consistent** [1] - 6:2
**contact** [2] - 8:11, 15:21
**contacts** [1] - 14:25
**contained** [1] - 10:1
**continue** [1] - 9:5
**copy** [1] - 9:1
**correct** [1] - 8:19
**country** [1] - 5:14
**COURT** [67] - 1:1, 3:7,

## C (continued)

3:20, 3:24, 4:17, 4:24, 5:5, 6:10, 6:13, 6:18, 7:19, 7:24, 8:3, 8:7, 8:10, 8:13, 8:18, 8:20, 8:23, 9:6, 9:9, 9:14, 9:16, 9:18, 9:22, 10:3, 10:6, 10:9, 10:16, 10:18, 10:22, 11:1, 11:6, 11:9, 11:14, 11:18, 12:1, 12:5, 12:8, 12:13, 12:15, 12:20, 13:7, 13:12, 13:24, 14:5, 14:8, 14:12, 14:17, 14:19, 14:21, 15:5, 15:15, 15:19, 15:22, 16:3, 16:5, 16:14, 16:17, 16:23, 16:25, 17:6, 17:10, 17:15, 17:23, 18:5, 18:21
**Court** [12] - 1:23, 1:24, 3:1, 3:3, 3:4, 6:9, 7:12, 7:22, 9:21, 11:22, 14:23, 19:8
**Court's** [1] - 15:24
**Court-Certified** [1] - 3:3
**COURTROOM** [1] - 3:4
**cover** [2] - 12:7, 12:25
**crime** [2] - 4:9, 10:1
**CRR** [2] - 1:23, 19:8
**curtailing** [1] - 6:25
**customarily** [1] - 6:23

## D

**data** [1] - 9:24
**DAY** [1] - 1:10
**december** [1] - 1:5
**decide** [1] - 18:7
**DEFENDANT** [1] - 1:19
**Defendant** [1] - 3:2
**defendant's** [1] - 3:13
**defense** [2] - 3:22, 17:10
**deliberate** [1] - 18:12
**deliberations** [1] - 18:14
**demonstrative** [1] - 12:18
**Department** [1] - 12:9
**depleted** [3] - 5:12, 5:16, 6:24
**depletion** [4] - 4:20, 5:8, 5:19, 6:5
**DEPUTY** [1] - 3:4
**DERIC** [1] - 1:19

**Deric** [1] - 1:19
**destroyed** [1] - 4:21
**developments** [1] - 18:4
**difference** [1] - 17:3
**different** [2] - 5:17, 8:11
**Dionne** [1] - 16:20
**discussed** [2] - 7:25, 18:5
**Discussion** [1] - 2:8
**dispute** [2] - 7:10, 9:23
**disruption** [1] - 4:19
**DISTRICT** [3] - 1:1, 1:1, 1:12
**District** [4] - 1:24, 3:4, 3:5, 19:8
**divide** [1] - 17:9
**document** [1] - 9:6
**documents** [1] - 4:10
**Doe** [3] - 8:21, 8:23
**DONALD** [1] - 1:12
**Donald** [1] - 3:5
**down** [3] - 7:17, 9:5, 9:20
**download** [1] - 10:12
**DUANE** [1] - 1:15
**during** [1] - 13:17

**E**

**either** [2] - 5:3, 6:22
**elements** [1] - 4:9
**Eleventh** [1] - 4:4
**Elmo** [1] - 9:3
**engaged** [1] - 6:23
**enterprise** [2] - 6:4, 6:22
**entities** [2] - 5:17, 5:24
**entitled** [1] - 19:5
**entity** [5] - 5:11, 5:15, 6:4, 6:6, 7:2
**equal** [1] - 17:15
**ESQ** [1] - 1:19
**established** [1] - 4:7
**et** [1] - 17:18
**evidence** [17] - 4:24, 8:7, 10:11, 10:16, 10:23, 11:19, 12:10, 12:11, 13:2, 13:20, 14:13, 14:18, 14:19, 15:9, 15:10, 15:15
**example** [1] - 12:25
**excise** [1] - 9:12
**excised** [1] - 8:17
**exhibit** [1] - 12:18
**exist** [1] - 5:5
**existed** [1] - 5:3

**expert** [5] - 7:19, 7:22, 8:15, 16:7, 16:11
**explain** [1] - 9:1
**expressed** [1] - 18:10
**extortion** [1] - 6:25
**extra** [2] - 5:18, 12:22
**extract** [1] - 14:25

**F**

**facts** [5] - 5:17, 13:14, 16:17
**fashion** [2] - 7:3, 8:2
**Fed** [1] - 4:3
**Federal** [1] - 1:23
**fine** [2] - 12:5, 12:21
**finish** [1] - 17:1
**first** [8] - 8:4, 9:11, 9:24, 11:2, 11:23, 12:6, 12:7, 12:8
**fits** [1] - 5:25
**FLORIDA** [1] - 1:1
**Florida** [6] - 1:4, 1:18, 1:21, 1:25, 3:5, 19:9
**following** [1] - 4:6
**FOR** [2] - 1:15, 1:19
**foregoing** [1] - 19:3
**foreign** [5] - 4:8, 5:24, 6:6, 6:15
**formulas** [1] - 11:21
**Fort** [1] - 1:21
**four** [1] - 18:4
**four-hour** [1] - 18:4
**FPR** [3] - 1:23, 19:8
**frankly** [3] - 4:7, 5:21, 6:14
**Friday** [1] - 18:6
**full** [1] - 17:12

**G**

**Garcia** [1] - 3:2
**GARCIA** [1] - 1:7
**general** [1] - 8:13
**gentlemen** [1] - 13:18
**given** [1] - 4:24
**GLENDA** [2] - 1:23, 19:8
**goal** [1] - 4:7
**goods** [1] - 7:1
**Government** [9] - 3:10, 3:15, 3:18, 4:1, 4:2, 16:1, 17:9, 17:11, 17:14
**GOVERNMENT** [1] - 1:15
**Government's** [1] - 4:6
**GPS** [1] - 7:13
**Graham** [1] - 3:5

**GRAHAM** [1] - 1:12
**gravamen** [1] - 9:23
**guess** [1] - 3:23
**Guy** [1] - 2:4

**H**

**half** [2] - 17:9, 17:13
**handle** [1] - 18:15
**happy** [1] - 9:5
**Held** [1] - 1:8
**hereby** [1] - 19:3
**historical** [1] - 12:16
**holiday** [1] - 18:9
**Honor** [16] - 4:18, 5:2, 6:7, 6:17, 7:8, 8:1, 8:16, 8:25, 9:4, 11:12, 13:21, 14:14, 16:24, 17:8, 17:12, 18:19
**Honorable** [1] - 3:5
**HONORABLE** [1] - 1:12
**hour** [3] - 17:9, 17:13, 18:4
**hour-and-a-half** [2] - 17:9, 17:13
**hundred** [2] - 7:4, 7:5

**I**

**identified** [1] - 15:13
**IGNACIO** [1] - 1:15
**immediately** [1] - 18:14
**impact** [1] - 4:13
**includes** [1] - 6:5
**incontrovertible** [1] - 5:1
**indicating** [1] - 3:11
**inference** [1] - 16:5
**information** [1] - 14:3
**inquiry** [1] - 6:25
**instructions** [4] - 17:25, 18:2, 18:11, 18:13
**insufficient** [1] - 7:23
**interesting** [1] - 6:19
**Interpreters** [1] - 3:3
**interrupted** [1] - 4:15
**interstate** [6] - 4:1, 4:8, 4:14, 4:15, 6:23, 6:24
**Interstate** [1] - 2:5
**introduce** [1] - 3:19
**introduced** [3] - 4:10, 4:11, 5:6
**introducing** [2] - 9:7, 9:9
**introduction** [2] -

3:13, 3:16
**investigator** [1] - 3:14
**involved** [1] - 3:8
**Issue** [3] - 2:4, 2:5, 2:7
**issue** [6] - 3:11, 3:21, 3:25, 4:1, 18:5
**issues** [2] - 4:5, 5:23
**items** [2] - 5:18, 6:24

**J**

**Jack** [1] - 8:21
**January** [1] - 19:7
**JESUS** [1] - 1:15
**John** [5] - 8:21, 8:23, 13:16, 13:18
**JR** [1] - 1:15
**Judge** [5] - 3:23, 14:22, 16:22, 18:3, 18:20
**JUDGE** [1] - 1:12
**jurisdiction** [2] - 5:16, 5:19
**jury** [2] - 9:19, 11:10
**JURY** [1] - 1:10
**Justice** [1] - 12:9

**K**

**Kindelan** [9] - 13:5, 13:9, 13:10, 13:19, 14:9, 14:15, 15:4, 15:13, 15:17
**knowing** [1] - 4:18

**L**

**ladies** [1] - 13:18
**Lauderdale** [1] - 1:21
**law** [2] - 5:13, 6:2
**least** [1] - 11:22
**lecture** [1] - 12:8
**LEONARDO** [1] - 1:7
**Leonardo** [7] - 3:2, 10:14, 11:4, 11:23, 11:24, 12:3, 12:25
**light** [1] - 18:3
**likely** [1] - 17:2
**line** [1] - 12:24
**link** [2] - 15:22, 16:1
**literally** [2] - 14:18, 14:19
**litigate** [1] - 3:12
**locations** [1] - 8:14
**Locka** [2] - 5:15, 7:2
**looked** [2] - 13:21, 14:5
**looks** [1] - 9:2
**losing** [1] - 15:15

**M**

**MACKENZIE** [1] - 1:15
**match** [1] - 8:8
**material** [1] - 12:23
**matter** [4] - 3:11, 3:23, 3:25, 19:5
**matters** [1] - 3:20
**maximum** [1] - 17:23
**mean** [5] - 6:14, 12:10, 14:12, 15:5, 16:20
**means** [1] - 4:23
**MIAMI** [1] - 1:2
**Miami** [7] - 1:4, 1:16, 1:18, 1:24, 1:25, 19:9, 19:9
**middle** [1] - 13:13
**might** [2] - 16:10, 17:1
**MIGUEL** [1] - 1:7
**minutes** [4] - 17:16, 17:17, 17:24
**Monday** [1] - 18:17
**moot** [2] - 3:15, 3:23
**Moot** [1] - 2:4
**MORALES** [1] - 1:7
**Morales** [10] - 3:2, 10:1, 10:15, 11:4, 11:23, 11:24, 12:3, 12:25, 14:1, 14:4
**Morales'** [1] - 13:2
**morning** [6] - 3:7, 3:9, 3:12, 7:7, 18:17, 18:20
**MR** [66] - 3:18, 3:23, 4:16, 4:18, 5:2, 6:7, 6:12, 6:17, 7:8, 7:21, 7:25, 8:6, 8:9, 8:12, 8:16, 8:19, 8:22, 8:25, 9:8, 9:11, 9:15, 9:17, 9:20, 9:23, 10:5, 10:8, 10:10, 10:17, 10:19, 10:24, 11:2, 11:8, 11:11, 11:17, 11:22, 12:4, 12:6, 12:12, 12:14, 12:19, 12:22, 13:8, 13:20, 14:1, 14:7, 14:10, 14:14, 14:18, 14:20, 14:22, 15:12, 15:17, 15:20, 15:24, 16:4, 16:11, 16:15, 16:22, 16:24, 17:4, 17:8, 17:11, 17:19, 18:3, 18:19, 18:20

**N**

**name** [14] - 11:23, 11:24, 12:20, 13:3, 13:9, 13:10, 14:10,

14:15, 14:25, 15:3, 15:6, 15:16, 16:1
**names** [2] - 12:13, 14:2
**narrative** [4] - 11:9, 11:15, 12:2, 12:7
**need** [6] - 5:10, 17:13, 17:17, 17:20, 17:21, 18:1
**next** [6] - 3:25, 4:17, 10:24, 11:24, 12:24, 14:8
**nickname** [9] - 13:6, 13:22, 13:24, 13:25, 14:1, 15:18, 15:20, 16:13, 16:14
**nicknames** [1] - 15:13
**NO** [1] - 1:2
**normally** [2] - 11:14
**North** [2] - 1:24, 19:9
**Northeast** [1] - 1:17
**nothing** [1] - 18:16
**notice** [4] - 7:13, 7:21, 7:22, 7:24
**number** [19] - 8:18, 10:2, 10:9, 10:20, 11:4, 11:25, 12:20, 12:24, 13:3, 13:14, 13:15, 13:23, 14:8, 15:1, 15:6, 16:2, 16:15, 16:16
**numbers** [8] - 8:8, 8:11, 11:15, 11:21, 12:13, 12:15, 14:6, 15:25

## O

**object** [1] - 11:23
**OF** [2] - 1:1, 1:4
**offered** [2] - 4:18, 11:13
**Office** [1] - 1:16
**OFFICER** [1] - 18:21
**Official** [1] - 1:23
**one** [6] - 4:8, 5:3, 6:10, 9:21, 13:20, 14:22
**Opa** [2] - 5:15, 7:2
**order** [1] - 3:1

## P

**P.A** [1] - 1:19
**page** [6] - 9:11, 9:24, 11:23, 12:6, 12:7, 12:25
**PAGE** [1] - 2:2
**PAGES** [1] - 1:11
**paragraph** [1] - 6:21
**parallel** [1] - 7:4

**part** [1] - 11:3
**particular** [4] - 8:8, 15:9, 16:2, 16:4
**parties** [1] - 3:8
**PAS** [1] - 12:9
**pass** [2] - 9:3, 11:2
**percent** [2] - 7:4, 7:5
**person** [4] - 10:14, 15:9, 16:7
**phone** [32] - 7:11, 7:15, 7:17, 7:20, 8:2, 8:8, 8:11, 8:24, 9:25, 10:4, 10:8, 10:10, 10:12, 10:13, 10:20, 11:5, 12:21, 13:2, 13:15, 13:22, 14:4, 14:6, 14:9, 14:24, 15:3, 15:21, 15:25, 16:12, 16:16, 17:20
**phonetic** [1] - 12:9
**physical** [1] - 12:9
**piece** [2] - 13:20, 14:22
**pocket** [1] - 8:24
**point** [1] - 15:8
**positive** [2] - 6:4, 6:13
**potential** [1] - 6:25
**Powers** [1] - 19:7
**POWERS** [2] - 1:23, 19:8
**precedent** [1] - 4:22
**prefer** [1] - 18:13
**presence** [1] - 3:14
**present** [4] - 3:9, 7:14, 13:10, 18:3
**presentation** [3] - 7:10, 11:12, 13:9
**presented** [2] - 4:2, 13:19
**presiding** [1] - 3:6
**previously** [3] - 3:8, 7:12, 7:21
**private** [1] - 3:13
**problem** [2] - 5:6, 15:5
**proceedings** [2] - 18:22, 19:4
**professional** [1] - 7:9
**programmed** [1] - 14:4
**proper** [1] - 7:24
**Prosecutions** [1] - 1:16
**prove** [1] - 10:3
**proved** [1] - 5:1
**provide** [2] - 6:8, 7:15
**pulled** [1] - 10:19
**purchaser** [2] - 7:1, 7:2
**purchases** [1] - 6:24
**purpose** [1] - 9:14

**pursue** [5] - 4:25, 6:1, 6:2, 6:8, 7:6

## Q

**questions** [1] - 9:12
**quite** [1] - 6:6

## R

**raise** [1] - 4:5
**raised** [1] - 4:1
**reached** [1] - 11:16
**read** [6] - 4:4, 5:9, 6:21, 11:3, 14:16
**really** [1] - 5:25
**reasons** [1] - 9:21
**received** [1] - 3:10
**record** [1] - 11:3
**recorded** [2] - 3:13, 3:19
**recordings** [2] - 17:19, 17:19
**records** [16] - 7:16, 7:18, 7:20, 8:2, 8:4, 8:5, 8:7, 8:10, 10:19, 10:22, 10:25, 11:19, 13:1, 16:16, 17:17, 17:20
**Records** [1] - 2:7
**recovered** [2] - 10:1, 14:24
**referred** [1] - 6:5
**referring** [1] - 15:3
**reflects** [1] - 10:12
**regarding** [1] - 7:13
**registered** [2] - 8:21, 13:15
**related** [1] - 3:20
**reluctant** [1] - 18:10
**removed** [1] - 9:17
**report** [4] - 7:10, 10:13, 11:3, 13:22
**REPORTED** [1] - 1:23
**Reporter** [1] - 1:23
**representative** [1] - 7:16
**require** [1] - 8:15
**research** [4] - 5:10, 5:24, 6:3, 6:20
**resolve** [2] - 7:7, 9:4
**resolved** [1] - 4:5
**resolves** [1] - 5:23
**rest** [1] - 17:4
**resume** [1] - 18:17
**reveal** [1] - 8:10
**review** [1] - 7:15
**reviewed** [1] - 16:12
**rise** [1] - 18:21
**robbery** [1] - 4:22

**Room** [1] - 1:17
**RPR** [1] - 19:8
**ruled** [2] - 7:12, 8:16
**rushing** [1] - 17:3

## S

**satisfy** [1] - 5:4
**saw** [2] - 10:9, 14:8
**scenarios** [1] - 7:4
**scene** [3] - 10:1, 10:4, 14:25
**schedule** [1] - 17:1
**Scheduled** [1] - 1:7
**Scheduling** [1] - 2:8
**seal** [1] - 12:11
**seated** [1] - 3:7
**Section** [1] - 1:16
**SECURITY** [1] - 18:21
**see** [6] - 5:24, 11:14, 12:7, 13:7, 18:7, 18:15
**seeking** [2] - 3:16, 3:18
**seized** [1] - 10:4
**sent** [1] - 3:11
**session** [2] - 18:1, 18:4
**show** [2] - 4:13, 5:15
**shows** [1] - 7:3
**simply** [2] - 5:2, 8:2
**slides** [1] - 13:9
**Smith** [3] - 8:21, 13:16, 13:18
**solely** [1] - 7:17
**someone** [2] - 10:4, 16:10
**song** [1] - 16:20
**sort** [2] - 9:24, 11:21
**Southeast** [1] - 1:20
**SOUTHERN** [1] - 1:1
**Southern** [1] - 3:5
**Spanish** [1] - 3:3
**Special** [1] - 1:16
**starts** [1] - 9:24
**statement** [2] - 3:13, 3:19
**statements** [1] - 9:9
**STATES** [3] - 1:1, 1:4, 1:12
**States** [5] - 1:16, 1:24, 3:4, 4:3, 19:8
**statute** [3] - 5:4, 5:10, 6:5
**STENOGRAPHICALLY** [1] - 1:22
**step** [1] - 4:17
**streamlined** [1] - 9:2
**Street** [2] - 1:17, 1:20

**stricken** [1] - 13:11
**strike** [2] - 12:22, 14:15
**submitted** [1] - 5:7
**subscriber** [1] - 14:3
**sufficient** [1] - 7:13
**suggest** [1] - 15:24
**suggesting** [1] - 5:22
**Suite** [1] - 1:20
**summaries** [1] - 9:13
**summarizing** [1] - 14:13
**summary** [10] - 7:10, 7:14, 7:15, 8:2, 10:13, 11:13, 11:15, 11:19, 11:20

## T

**technician** [1] - 10:6
**Telephone** [1] - 2:7
**telephone** [8] - 10:2, 11:4, 11:25, 12:24, 13:3, 13:23, 16:15, 16:16
**territorial** [1] - 5:18
**testified** [2] - 3:15, 13:5
**testify** [2] - 8:1, 11:6
**testifying** [1] - 7:19
**testimony** [7] - 3:16, 4:11, 8:3, 11:13, 11:20, 15:12, 16:8
**THE** [68] - 1:12, 1:15, 1:19, 3:7, 3:20, 3:24, 4:17, 4:24, 5:5, 6:10, 6:13, 6:18, 7:19, 7:24, 8:3, 8:7, 8:10, 8:13, 8:18, 8:20, 8:23, 9:6, 9:9, 9:14, 9:16, 9:18, 9:22, 10:3, 10:6, 10:9, 10:16, 10:18, 10:22, 11:1, 11:6, 11:9, 11:14, 11:18, 12:1, 12:5, 12:8, 12:13, 12:15, 12:20, 13:7, 13:12, 13:24, 14:5, 14:8, 14:12, 14:17, 14:19, 14:21, 15:5, 15:15, 15:19, 15:22, 16:3, 16:5, 16:14, 16:17, 16:23, 16:25, 17:6, 17:10, 17:15, 17:23, 18:5
**theory** [17] - 4:6, 4:12, 4:14, 4:19, 4:21, 4:25, 5:1, 5:7, 5:8, 5:14, 6:1, 6:2, 6:14, 6:15, 6:22, 7:6

**thereby** [1] - 6:25
**tie** [1] - 17:17
**today's** [1] - 18:4
**top** [1] - 10:2
**Tower** [1] - 1:20
**towers** [1] - 8:14
**transcription** [1] - 19:4
**travel** [2] - 4:8, 4:14
**TRIAL** [1] - 1:10
**trimmed** [1] - 9:5
**try** [1] - 6:10
**trying** [2] - 5:15, 13:12

## U

**U.S** [2] - 5:13, 5:16
**under** [3] - 4:22, 6:21, 11:13
**underneath** [1] - 12:3
**understood** [2] - 5:3, 16:22
**UNITED** [3] - 1:1, 1:4, 1:12
**United** [5] - 1:16, 1:24, 3:4, 4:3, 19:8
**unless** [1] - 9:16
**up** [2] - 9:3, 17:18
**uses** [1] - 13:6

## V

**Vargas** [3] - 2:4, 3:14, 4:11
**VAZQUEZ** [59] - 1:15, 3:18, 4:16, 4:18, 5:2, 6:7, 6:12, 6:17, 7:8, 7:21, 7:25, 8:6, 8:9, 8:12, 8:16, 8:19, 8:22, 8:25, 9:8, 9:11, 9:15, 9:17, 9:20, 9:23, 10:5, 10:8, 10:10, 10:17, 10:19, 10:24, 11:2, 11:8, 11:11, 11:17, 11:22, 12:4, 12:6, 12:12, 12:14, 12:19, 12:22, 13:8, 13:20, 14:1, 14:7, 14:10, 14:14, 14:18, 14:20, 15:12, 15:17, 15:20, 16:11, 16:15, 16:24, 17:4, 17:8, 17:19, 18:19
**versus** [1] - 4:3
**victim's** [1] - 6:25
**video** [1] - 17:21
**vs** [1] - 1:5

## W

**wait** [1] - 18:7
**Warwick** [1] - 16:20
**waste** [1] - 6:18
**Wednesday** [2] - 1:5, 17:5
**week** [1] - 18:11
**witness** [14] - 3:14, 7:11, 7:15, 7:17, 8:1, 9:16, 10:2, 10:25, 11:6, 13:5, 13:21, 15:2, 15:6, 16:6
**wondering** [1] - 17:1

## Y

**yesterday** [3] - 3:15, 18:5, 18:10

## Z

**ZACCA** [9] - 1:19, 3:23, 14:22, 15:24, 16:4, 16:22, 17:11, 18:3, 18:20
**Zacca** [2] - 1:19, 9:12